(No. 88441.—

AURELIA PUCINSKI, Petitioner, v. THE COUNTY OF COOK *et al.*, Respondents.

*Opinion filed July 6, 2000.—Rehearing denied October 2, 2000.*

FREEMAN, J., took no part.

Lee J. Schwartz, of Chicago, for petitioner Aurelia Pucinski.

Fern C. Bomchill, Britt M. Miller and James C. Schroeder, of Mayer, Brown & Platt, of Chicago, for petitioner Real Applications, Ltd.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Thomas M. Burnham and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for respondents County of Cook and Maria Pappas.

Thomas F. McGuire, of Long Grove, for *amicus curiae* Illinois Sheriff's Association.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Aurelia Pucinski, clerk of the circuit court of Cook County, brings this original action for *mandamus* (Ill. Const. 1970, art. VI, § 4(a)) to compel Cook County and its treasurer to pay Real Applications, Ltd., for a mainframe computer and related software purchased by Pucinski for the circuit clerk's office. Real Applications, Ltd., initially named as a respondent, has been redesignated as a petitioner on the court's own motion and seeks the same relief as Pucinski. For the reasons that follow, the writ is denied.

The verified *mandamus* petition filed by Pucinski indicates that she accepted a proposal from Real Applica-

tions, Ltd., to purchase a new computer and related software for approximately $501,000. Pucinski accepted the proposal in her capacity as clerk of the circuit court of Cook County, and acquired the computer and software for the sole purpose of enabling her to perform her official duties as clerk.

Pucinski believed that payment for the computer and software should be made using money retained by Cook County in its "Court Document Storage Fund." The Court Document Storage Fund was established by the county treasurer pursuant to section 27.3c of the Clerks of Courts Act (705 ILCS 105/27.3c (West 1998)). It was funded by court document fees charged and collected by the clerk of the circuit court to defray the expense of establishing and maintaining a document storage system in the circuit clerk's office.

According to section 27.3c of the statute, "any costs relative to the storage of court records, including hardware, software, research and development costs, and related personnel" were payable from the Court Document Storage Fund. 705 ILCS 105/27.3c (West 1998). There is no dispute that the items purchased by Pucinski fell within these categories. There is also no dispute that the county's Court Document Storage Fund contained sufficient funds to cover the purchase. According to the verified petition, more than $7 million remained in the fund unencumbered at the time Pucinski bought the computer and software from Real Applications, Ltd.

The problem with Pucinski's purchase is that it was not made in accordance with the provisions of the Counties Code (55 ILCS 5/1—1001 *et seq.* (West 1998)) and Cook County Ordinances, chapter 10, sections 17 and 18. Specifically, the contract signed by Pucinski with Real Applications, Ltd., did not have the prior approval of the Cook County board of commissioners and was not signed by the president of the board, the county purchasing

agent and the comptroller (55 ILCS 5/5—36001 (West 1998); Cook County Ordinances, ch. 10, § 17) and it was not the subject of competitive bidding (55 ILCS 5/5—36006 (West 1998); Cook County Ordinances, ch. 10, § 18).

According to the *mandamus* petition, Pucinski requested board approval, but the president of the board declined to put her request on the board's agenda. Exhibits attached to the petition indicate that the county opposed Pucinski's plan because it was inconsistent with the county's efforts to upgrade its own computing facilities and to consolidate county users on a single system.

When the board failed to consider Pucinski's request, she executed the purchase contract herself in her official capacity. She did so on the grounds that the purchase was necessary in order for her office to perform its statutory and constitutional obligations. Pucinski believed that her solution to her office's computing problems was superior to the county's and that she had ultimate authority for determining how her office should be run.

Pucinski accepted a proposal from Real Applications, Ltd., on September 13, 1999. She then sent a letter to the president of the Cook County board advising him of her actions. One week later, on September 20, 1999, Pucinski signed the actual purchase contract. At the direction of the board president, the Cook County State's Attorney promptly notified Pucinski and Real Applications, Ltd., that the contract was not authorized and that no invoices issued under that contract would be paid. The same day, the new equipment was delivered and installed in Pucinski's office. When Real Applications, Ltd., failed to receive payment in accordance with the contract, its attorneys sent a demand letter to Pucinski asking for the contract price plus late fees. This litigation followed.

The standards governing Pucinski's petition are well

established. The writ of *mandamus* is an extraordinary remedy to enforce, as a matter of public right, "the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986). It will not be granted unless the petitioner can show a clear, affirmative right to relief, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999).

These requirements were not met here. Although clerks of the circuit courts are nonjudicial officers of the judicial branch of state government and not employees of the counties (Ill. Const. 1970, art. VI, § 18(b); *County of Kane v. Carlson*, 116 Ill. 2d 186, 200 (1987)), responsibility for maintaining the clerks' offices belongs to the counties, not the state. The county boards provide the necessary rooms and office furniture for the clerks, and the cost is paid from the county treasuries. 705 ILCS 105/20 (West 1998). The county boards provide the clerks' compensation and the "amount necessary for clerk hire, stationery, fuel and other expenses." 705 ILCS 105/27.3 (West 1998). The county boards bear the expense of establishing and maintaining automated record keeping systems and document storage systems in the clerks' offices (705 ILCS 105/27.3a, 27.3c (West 1998)), and the clerks' offices are subject to annual audits by the county boards (705 ILCS 105/27.8 (West 1998)).

Because operations of the circuit clerks' offices are paid for by the counties, any payments made from the county treasuries on behalf of the clerks' offices must comport with the requirements of the Counties Code. In Cook County, the clerk must also meet the requirements of the applicable Cook County ordinances. As previously indicated, the Counties Code and Cook County ordinances expressly require competitive bidding and prior approval by the board for contracts of the magnitude of

the one at issue in this case. In addition, section 3—10014 of the Counties Code explicitly states that "[n]o money or funds shall be paid out of any county treasury, except in accordance with an order of the county board, or when payment is specially authorized by law to be made." 55 ILCS 5/3—10014 (West 1998).

Pucinski contends that subjecting her computer purchase to the requirements of the Counties Code and Cook County ordinances would unduly infringe on her right to run her own office. She likens the situation to one where a county attempts to interfere with the hiring and classification of a circuit clerk's employees. In such a case, our appellate court has held that the Clerks of Court Act does not empower county boards to control the hiring, firing, promotion, or compensation of deputy clerks hired by the circuit court pursuant to statute. See *Kotche v. County Board*, 87 Ill. App. 3d 1127, 1131 (1980).

The situation here is distinguishable. Personnel matters are not at issue. This dispute involves the Court Document Storage Fund, and a circuit clerk's authority with respect to that fund is defined by section 27.3c(c) of the Clerks of Courts Act (705 ILCS 105/27.3c(c) (West 1998)). Section 27.3c(c) does not confer on circuit court clerks the right to direct how monies in the Court Document Storage Fund should be expended. Appropriate expenditures from the fund for the storage of court records, including expenditures for computer hardware and software, are to be determined by the county in the first instance. Under the express terms of the law, the circuit clerks' authority is limited to approving such expenditures.

There is likewise no merit to Pucinski's argument that placing her contracts for computer-related purchases under the control of the county contravenes article II, section 1, of the Illinois Constitution of 1970, which provides that the legislative, executive and judicial

branches of government are separate and that "no branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The separation of powers provision does not create rigid boundaries prohibiting every exercise of functions by one branch of government which ordinarily are exercised by another. *People v. Warren*, 173 Ill. 2d 348, 367 (1996). It does prohibit the other branches of government from taking action which unduly infringe upon the inherent powers of judges. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411 (1997). That, however, is not an issue here.

The right to impose and expend court document storage fees does not derive from the inherent power of the court. It is purely statutory. Absent statutory authorization, the fees could not be collected. Under the terms of the Clerks of Courts Act, which governs the fees, the fees can only be collected if the county board requires them to be. 705 ILCS 105/27.3c(a), (b) (West 1998). Judges have nothing to do with establishment or expenditure of the fees. All judges can do is waive the fee in a particular case. 705 ILCS 105/27.3c(c) (West 1998). After a fee is assessed, it must be remitted to the county treasurer, and the power to make expenditures is vested in the county board, not the judiciary. 705 ILCS 105/27.3c(c) (West 1998). Under these circumstances, requiring expenditure of the funds to comply with the Counties Code and Cook County ordinances does not implicate separation of powers concerns.

In reaching this conclusion, we are aware that the freedom of circuit clerks to spend public money for their offices is more circumscribed than some holders of that office would prefer. That, however, is a matter for the legislature. The legislature has determined that counties should fund the operations of the circuit clerks and that expenditures for the circuit clerks' offices should meet the same requirements as other expenditures from the

548

county treasury. Under the Illinois Constitution, that is the legislature's prerogative. As long as spending decisions by the counties do not imperil the operation of the courts, separation of powers principles do not warrant intervention by the court.

For the foregoing reasons, Pucinski has no basis for compelling Cook County and its treasurer to pay Real Applications, Ltd., for the mainframe computer and related software she purchased for her office. Because the purchases were not made in accordance with the Counties Code and the pertinent Cook County ordinances, any such payments would be contrary to law. The writ is therefore denied.

A motion by Cook County and the county treasurer to strike part of Pucinski's brief, which we took with the case, is denied as moot.

*Writ denied.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.